IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| STEVAN ZIMMER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CHG COMPANIES, INC. dba COMPHEALTH, a Delaware company,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO STRIKE AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:11-CV-681 TS |

This matter is before the Court on Defendant's Motion for Summary Judgment and Plaintiff's Motion to Strike. For the reasons stated below, the Court will deny Plaintiff's Motion to Strike and grant Defendant's Motion for Summary Judgment.

I.  BACKGROUND

Plaintiff, Stevan Zimmer, is a medical doctor who specializes in interventional cardiology.  On May 18, 2007, CompHealth and Dr. Zimmer entered into a Physician Professional Services Agreement ("Agreement").  Under this Agreement, Dr. Zimmer agreed to

1

work "on an independent contractor basis to furnish locum tenens physician services to CompHealth Clients."[1]  Paragraph 4.3 of the agreement states:

> In the event that CompHealth cancels an Assignment with less than thirty (30) days notice for reasons other than those allowed in Paragraph 4.1 . . . CompHealth's maximum liability to Physician shall be the amount of Compensation Physician would have earned for the number of scheduled work days between thirty (30) days and the number of days notice of cancellation actually given . . . .[2]

Under Paragraph 4.1 of the Agreement, Dr. Zimmer agreed that "CompHealth may immediately cancel this Agreement or any Assignment without notice or liability to Physician" for several reasons, including "[u]pon Client's request for removal of Physician for reasons relating to professional competence or integrity."[3]

A.	INNOVIS ASSIGNMENT

On May 25, 2010, CompHealth placed Dr. Zimmer on assignment at Innovis Health located in Fargo, North Dakota ("Innovis").  Dr. Zimmer began this assignment on June 1, 2010. On June 17, 2010, Dr. Zimmer contacted CompHealth to state that the assignment was not going well and that he wished to terminate it.  That same day, Ms. Schlaht, Client Relations Manager at Innovis, called Patricia Peacock, a CompHealth employee to report concerns with Dr. Zimmer and ask that he be removed from the assignment.  Ms. Peacock took contemporaneous notes of her conversation and entered them into CompHealth's electronic note taking system.  The concerns entered into the note taking system indicate that CompHealth was informed that Dr.

---

[1] Docket No. 25 Ex. B, at 1.

[2] Id. ¶ 4.3.

[3] Id. ¶ 4.1(d).

Zimmer was 60-70 reads behind on echocardiograms, which delayed patient care and put patients at risk; he did not answer his pages in a timely manner; he arrived 1-2 hours late—and did not do hospital rounds before; he was holding up $125,000 in payments because he was behind on his documentation; he failed to place documentation in charts for patient follow up visits; and he displayed rude/inappropriate behavior to nursing staff.[4]

B.   ST. FRANCIS ASSIGNMENT

On February 2, 2011, CompHealth placed Dr. Zimmer on an assignment at St. Francis Health Center in Topeka, Kansas ("St. Francis").  About two weeks into the assignment, Chris Lipp, Director of Cardio and Vascular Services and Director of Radiology called CompHealth and requested that Dr. Zimmer's assignment be terminated.  Linda Larson, CompHealth's Manager of Operations, took contemporaneous notes of her conversation and entered them into CompHealth's electronic note taking system.  Specifically, St. Francis informed CompHealth that Dr. Zimmer was sitting on a case "all day long", demanded to use equipment the hospital did not have, advised a patient to go to another hospital for services, was not rounding on patients in a timely manner, wanted to do stress tests instead of nuclear testing, which did not work for the St. Francis facility; and refused to do interventional cases, which is what they hired him for.[5]  On February, 18, 2011, CompHealth terminated Plaintiff's assignment at the request of St. Francis.

---

[4]Docket No. 25 Ex D, at 2-3.

[5]*Id.* at 4.

II. MOTION TO STRIKE

Plaintiff objects that statements made by Ms. Schlaht at Innovis to Patricia Peacock at CompHealth are hearsay and lack foundation. Accordingly, he argues that these statements cannot be used to support a summary judgment motion. Dr. Zimmer likewise objects to statements to CompHealth made by Chris Lipp at St. Francis for the same reasons. These objections are misplaced.

Hearsay is an out of court statement that "a party offers into evidence to prove the truth of the matter asserted in the statement."[6] "By contrast, '[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.'"[7] The statements by hospital staff to CompHealth are not hearsay because they are not offered to prove the truth of the matter asserted. These statements are offered only to show CompHealth's motivations for exercising Paragraph 4.1(d) of the Employment Agreement and thus, do not rely on whether the statements are true.[8]

Plaintiff additionally objects to the admissibility of the contemporaneous notes that were entered into CompHealth's electronic note taking system by CompHealth employees when they received complaints about Dr. Zimmer. The Court finds that these records fall under the business records exception in Rule 803(6) of the Federal Rules of Evidence. Specifically, the

---

[6] Fed. R. Evid. 801(c)(2).

[7] *Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1087 (10th Cir. 2001) (quoting Fed. R. Evid. 801 advisory committee's note (1972)).

[8] *See e.g., Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1423 (10th Cir. 1991) (evidence not hearsay because it was not offered to prove the truth of its contents, but to show defendant's motivation during a reduction in force).

Court finds that the record was made at or near the time the complaint was received by someone with knowledge, the record was kept in the course of a regularly conducted activity of a business or organization, making the record was a regular practice when complaints were received, and there is no indication of a lack of trustworthiness.

Foundation requires a witness to have personal knowledge of matters about which he testifies.[9]  However, Mr. Lipp and Ms. Schlaht need not have personal knowledge of any alleged issues of incompetence.  They need only have personal knowledge that they notified CompHealth of Innovis' and St. Francis' desire to terminate Dr. Zimmer.  Likewise Ms. Peacock and Ms. Larson only need have personal knowledge about what they were told.  Ms. Peacock and Ms. Larson were the employees of CompHealth who were contacted by Innovis and St. Francis, and, as such, have firsthand knowledge of the requests for removal.  They can personally attest to the fact that CompHealth was notified of a client's request that CompHealth remove Dr. Zimmer from the assignments.  Further, they can each testify to the reasons given to CompHealth for the requested removal.  For that reason, their testimony has proper foundation.  Therefore, the Court will deny Plaintiff's Motion to Strike.

III.  MOTION FOR SUMMARY JUDGMENT

A.   STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.[10]  The Court may

---

[9]*See United States v. Nieto*, 60 F.3d 1464, 1468 (10th Cir. 1995).

[10]*See* Fed. R. Civ. P. 56(a).

look to pleadings, depositions, answers to interrogatories and affidavits.[11] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[12] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[13]

B.   DISCUSSION

Under Utah law,[14] in order to establish a breach of contract, plaintiff must show (1) the existence of a contract; (2) performance under that contract by the party seeking to recover; (3) a breach of the contract; and (4) resulting damages.[15]

Plaintiff's complaint alleges that Defendant breached its contract with Plaintiff when it cancelled Plaintiff's assignments without thirty days' prior notice and failed to pay Plaintiff for the difference between the required thirty days' prior notice and the time of the actual notice provided. Defendant responds that, under the contract, it is not required to pay Plaintiff for such time if the cancellation occured "[u]pon Client's request for removal of Physician for reasons

---

[11] *See. e.g.*, *Celotex Corp. v. Catrell*, 477 U.S. 317, 323–24 (1986).

[12] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[13] S*ee Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[14] Paragraph 5.5 of the employment Agreement provides that "[t]his Agreement shall be governed by the laws of the State of Utah."

[15] *See e.g., Eleopulos v. McFarland & Hullinger, LLC*, 145 P.3d 1157, 1159 (Utah Ct. App. 2006).

relating to professional competence or integrity."[16] As it is undisputed that the cancellation of Plaintiff's assignments were made pursuant to requests from Defendant's clients, the only question before the Court is whether or not those requests were related to professional competence or integrity.

In Utah, "[c]ontract construction 'begins and ends with the language of the contract.'"[17] Each contract provision is considered "in relation to all of the others, with a view toward giving effect to all and ignoring none."[18] "[A]s the Utah Supreme Court recently explained, the interpreting court must first determine whether the contract's language is ambiguous."[19] "A contract term is ambiguous 'if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies.'"[20] "This is a question of law for the court to decide without reference to parol evidence."[21] "When the parties offer opposing interpretations that are reasonably supported by the contract's language, the court should consider extrinsic evidence that supports the parties' interpretations of the contract."[22] "In

---

[16] Docket No. 25 Ex. B, ¶ 4.1(d).

[17] *United States v. Dunn*, 557 F.3d 1165, 1172 (10th Cir. 2009) (quoting *Daines v. Vincent*, 190 P.3d 1269, 1277 (Utah 2008)).

[18] *Cafe Rio, Inc. v. Larkin-Gifford-Overton, LLC,* 207 P.3d 1235, 1240 (Utah 2009) (quoting *Green River Canal Co. v. Thayn*, 84 P.3d 1134, 1141 (Utah 2003)).

[19] *Dunn*, 557 F.3d at 1172 (citing *Daines*, 190 P.3d at 1275-76).

[20] *Id.* (quoting *Daines*, 190 P.3d at 1275).

[21] *Id*. (citing *Daines*, 190 P.3d at 1276).

[22] *Id*. (citing *Daines*, 190 P.3d at 1275-76).

contrast, when the contract language is not susceptible to contrary interpretations, the contract is not ambiguous, and its plain meaning should be enforced."[23]

Defendant argues that the Agreement is not ambiguous and should be interpreted by its plain meaning. Defendant urges that a simple Webster's Dictionary definition of competence should govern, and that under such a definition competence means "having requisite or adequate ability or qualities."[24] Under Utah law, "'[i]n interpreting contracts, the ordinary and usual meaning of the words used is given effect,' which 'ordinary meaning . . . is often best determined through standard, non-legal dictionaries.'"[25]

Defendant's proffered definition is consistent with the other terms of the agreement, including the other terms which describe Plaintiff's responsibilities under the agreement. Paragraph 1.5 of the agreement requires Plaintiff to "faithfully and diligently render Services pursuant to the highest professional and ethical standards and in accordance with accepted standards of care. [Plaintiff] shall furnish Services in accordance with all applicable state and federal laws, Client policies, procedures, by-laws and standards . . . for the medical profession and Physician's specialty."[26]

---

[23] *Id.* (citing *Daines*, 190 P.3d at 1277).

[24] Docket No. 25, at 11 (quoting Merriam-Webster's Collegiate Dictionary 253 (11th ed.)).

[25] *S. Ridge Homeowners' Ass'n v. Brown*, 226 P.3d 758, 759 (Utah Ct. App. 2010) (quoting *Warburton v. Va. Beach Fed. Sav. & Loan Ass'n*, 899 P.2d 779, 782 (Utah Ct. App. 1995)).

[26] Docket No. 25 Ex. B, ¶ 1.5.

Plaintiff argues that the Agreement contains no definition of professional competence and does not provide guidance about what that term might mean.  However, the mere fact that a term is not defined in the Agreement does not make it ambiguous.  Plaintiff does not offer any alternative definitions for professional competence, nor does Plaintiff offer any evidence that when Dr. Zimmer signed the Agreement he intended that professional competence have any specialized meaning, or that he acted in reliance on some other meaning of the term.

This is not a case where "the parties offer opposing interpretations that are reasonably supported by the contract's language."[27]  As Plaintiff has not supplied the Court with an alternative meaning reasonably supported by the language of the contract, and as the meaning proffered by Defendant is supported by the language of the contract without any strained reading of the term, the Court has no cause to look outside the four corners of the document to find an ambiguity.

As the contract is unambiguous, the Court need only determine whether Defendant received requests for Plaintiff's removal from Innovis and St. Francis for reasons related to Plaintiff's professional competence.  Defendant argues that Innovis and St. Francis reported serious concerns about whether Plaintiff had the ability or qualities needed to successfully perform interventional cardiology services at their hospitals.  They articulated those concerns and requested that Plaintiff's assignments be terminated.

 Defendant received complaints from Innovis that Plaintiff could not adequately keep up with the required workload and was putting patients at risk, holding up payments and the work of

---

[27]*Dunn*, 557 F.3d at 1172 (citing *Daines*, 190 P.3d at 1275-76).

other doctors, and was difficult to work with.  Similarly, Defendant received complaints from St. Francis that Plaintiff was unable or unwilling to treat some patients, had difficulty working with the hospital's equipment, had difficulty following the testing procedures used at the hospital, and refused to perform the job for which he was hired.  Once it received these complaints, Defendant was justified in terminating Plaintiff's assignments under Paragraph 4.1 of the Agreement.  For these reasons, and as there are no disputed issues of material fact, the Court finds that Defendant did not Breach its contract with Plaintiff.

## IV.  CONCLUSION

Based on the foregoing, it is therefore

ORDERED that Plaintiff's Motion to Stike (Docket No. 33) is DENIED.  It is further

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 26)  is GRANTED.

The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff.

DATED   December 5, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge